UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 08-60810-Civ-Cohn/Seltzer

ORLANDO HERNANDEZ,

       Plaintiff,

v.

MOHAWK INDUSTRIES, INC.,

       Defendant.

_____/

## ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

**THIS CAUSE** is before the Court upon Defendant's Corrected Motion for Summary Judgment [DE 38], Plaintiff's Response [DE 51/52], Defendant's Reply thereto [DE 55].  The Court has carefully considered the motions, exhibits and all relevant filings, and the argument of counsel at a hearing held on August 20, 2009.

I.  BACKGROUND

Plaintiff Orlando Hernandez ("Plaintiff") filed this complaint alleging retaliation in state court pursuant to the Florida Whistleblower Act ("FWA") against his former employer, Defendant Mohawk Industries ('Mohawk" or "Defendant").  Mohawk  removed this action to state court.  After eleven (11) months for discovery, Mohawk moved for summary judgment.

Many of the critical facts needed to resolve this motion are undisputed.  Prior to his termination on January 30, 2008, Plaintiff was employed by Defendant as a supervisor in the Samples Section.  Plaintiff was originally hired as an hourly worker in 1998, promoted to night shift supervisor in the Tiles section in 2003, and transferred (at his request) to the day shift supervisor in Samples in July of 2007.   A few months later,

on November 12, 2007, Edward de Pasquale, the former Warehouse Manager, met with Human Resources representative Maxine Headcock expressing concern over Plaintiff's performance.  On November 21, 2007, Plaintiff met with Headcock, Jeff Bove (Operations Manager) and de Pasquale.[1]  At that time, Plaintiff was placed on a Performance Improvement Plan ("PIP").  The PIP included provisions that Plaintiff needed to improve his oversight of his staff, as he was cited for poor supervision and the inability to account for the whereabouts and actions of staff while on the clock.  The PIP warned Plaintiff that failure to make adequate progress could result in his termination and set specific goals for 30, 60 and 90 days, and review meetings each 30 days.

One week later, Jeff Bove assumed the duties of Warehouse Manager while he sought a replacement for de Pasquale.  Although disputed by Plaintiff, Bove observed Plaintiff on several occasions leaving the warehouse around 10:00am and not returning until after 12 noon.  Bove instructed Plaintiff not to visit the other two warehouses where Plaintiff had employees under his supervision based upon Bove's suspicions that Plaintiff was going to his home near one of the other warehouses.  On December 17, 2007, Bove promoted Armando Diaz, a Senior Safety Specialist, to Warehouse Manager.  On December 17, 21 and 23, Diaz met with Plaintiff regarding needed improvements to Plaintiff's performance under the PIP, though Plaintiff disputes what was discussed at these meetings.

On January 29, 2008, Diaz gave Plaintiff permission to visit the other

---

[1] Edward De Pasquale resigned his position as Warehouse Manager on November 28, 2007.

warehouses.  However, Diaz drove by Plaintiff's house around 11:15am and found

Plaintiff there.  Plaintiff was confronted at the scene by Diaz and terminated by him the

next day for failing to meet his PIP goals and showing poor judgment by going home

during working hours when his subordinates were not on lunch break.  Plaintiff's PIP

specifically included his inability to account for the whereabouts and actions of his staff.

It is undisputed that Plaintiff does not know who made the decision to terminate his

employment, but he believes it was Armando Diaz.

    Plaintiff contends that his PIP discipline and his termination were all done in

retaliation for objecting to Jeff Bove's instruction in 2003 to terminate black workers,

and for his reporting of privacy violations to Human Resources in late 2007.  These

privacy violations consisted of one or three photos taken by Saul Hernandez (no

relation) in September or October of 2007 of workers at the warehouse in the

bathroom.  Though Plaintiff has never seen the photos, other workers submitted

declarations that they saw photographs posted in the warehouse of Oscar Ochoa,

Jorge Chacana and/or Osmeley Ortega using the bathroom.  The photo(s) were known

to exist by supervisor Wilson Alvarez and former Warehouse Manager Edward de

Pasquale.  Alvarez allegedly made jokes about the sexual orientation of those in the

photos.

    Employees Chacana and Ortega complained to Maxine Headcock of Human

Resources, but nothing was done, according to their declarations.[2]  Saul Hernandez

admitted to Headcock that he took one photo of Ochoa sleeping (dressed) in the

---

[2]  Defendant has asserted that many of the statements in the declarations are
either hearsay or lack the personal knowledge required for admissibility.

bathroom.  Saul Hernandez was supervised by Wilson Alvarez and was his friend.  He was disciplined for using his cell phone at work (which he used to take the picture).  Headcock recalls seeing only the picture of Ochoa sleeping.

As further background to Plaintiff's contentions, there is a history of bad relations between supervisor Wilson Alvarez and his employees, several of whom submitted declarations to support Plaintiff's contentions in this case.  These employees, including the ones whose pictures were taken, had complained to the Atlanta "main" office of Mohawk about Alvarez.  The record is not clear, but this complaint and subsequent investigation by the Atlanta main office may have also occurred in November of 2007.  Alvarez is a friend of Jeff Bove.  Bove believes that Plaintiff was behind the letter sent by employees to Atlanta, while Alvarez dislikes Plaintiff.

Plaintiff disputes the date that he complained to Headcock on behalf of these employees regarding the bathroom photos, a factual issue of importance to ruling on the motion for summary judgment.  In his deposition, Plaintiff testified that he told Headcock in January of 2008.  However, in his errata sheet filed on June 11, 2009, Plaintiff changes this answer and asserts that he complained to Headcock on November 9, 2007.   At the hearing, the Court granted Defendant's motion to strike the errata sheet.  Therefore, it is undisputed that Plaintiff met with Headcock in January of 2008.

Plaintiff did supervise employees at two other warehouses and Plaintiff's house is five minutes from the auxiliary warehouse.  Plaintiff asserts that there was no policy for a supervisor to report to anyone when they leave for lunch.  Plaintiff believes the PIP was deliberately impossible to complete successfully as part of his plan to

terminate him.  Defendant asserts, however, that Plaintiff has put forth no specific

testimony as to why it was impossible.  Plaintiff further alleges that he received only

favorable reviews until November 21, 2007.  Finally, as further evidence of the

conspiracy against him orchestrated by Bove, Plaintiff submits declarations from other

employees who saw Alvarez and one of Alvarez's employees in Plaintiff's department

before Plaintiff's shift causing Plaintiff's area in the warehouse to be "messy and

disorganized."

With regard to Plaintiff's allegations that he refused to terminate black workers at

the direction of Jeff Bove, the evidence from Plaintiff's deposition is that this alleged

"order" to terminate took place in 2003, and was based upon Bove's facial expressions

and physical motions.  Plaintiff assumed that Bove wanted the black workers

terminated on the basis of race.  Plaintiff also makes a general allegation that blacks

were never promoted to supervisors or managers at the Mohawk warehouses in South

Florida.

## II. DISCUSSION

### A.  Summary Judgment Standard

The Court may grant summary judgment "if the pleadings, the discovery and

disclosure materials on file, and any affidavits show that there is no genuine issue as to

any material fact and that the movant is entitled to a judgment as a matter of law."

Fed. R. Civ. P. 56(c).   The movant "bears the initial responsibility of informing the

district court of the basis for its motion, and identifying those portions of [the record]

which it believes demonstrate the absence of a genuine issue of material fact."  Celotex

Corp. v. Catrett, 477 U.S. 317, 323 (1986).  To discharge this burden, the movant must

point out to the Court that there is an absence of evidence to support the nonmoving party's case.  Id. at 325.

After the movant has met its burden under Rule 56(c), the burden of production shifts and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  According to the plain language of  Fed. R. Civ. P. 56(e), the non-moving party "may not rely merely on allegations or denials in its own pleading," but instead must come forward with "specific facts showing a genuine issue for trial."  Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 587.

Essentially, so long as the non-moving party has had an ample opportunity to conduct discovery, it must come forward with affirmative evidence to support its claim.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).  "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party."  Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990).  If the evidence advanced by the non-moving party "is merely colorable, or is not significantly probative, summary judgment may be granted."  Anderson, 477 U.S. at 249-50 (citations omitted).

## B.  Florida Whistleblower Act claim

Plaintiff's single claim under the Florida Whistleblower Act ("FWA") alleges termination in retaliation for refusing to obey and complaining about an unlawful practice.   In analyzing a retaliatory discharge claim filed pursuant to the FWA, the United States Court of Appeals for the Eleventh Circuit has approved the use of the analysis used in Title VII retaliation cases.  Sierminski v. Transouth Fin. Corp., 216

F.3d 945, 950 (11th Cir. 2000).  To establish a prima facie case for retaliation, Plaintiff

must show that "1) he engaged in protected activity; 2) his employer was aware of that

activity; 3) he suffered adverse employment action; and 4) there was a causal link

between his protected activity and the adverse employment action."  Maniccia v. Brown,

171 F.3d 1364, 1368 (11th Cir. 1999).  "To meet the causal link requirement, the

plaintiff 'merely has to prove that the protected activity and the negative employment

action are not completely unrelated.'"  Holifield v. Reno, 115 F.3d 1555, 1566 (11th Cir.

1997) (quoting E.E.O.C. v. Reichhold Chemicals, Inc., 988 F.2d 1564, 1571-72 (11th

Cir. 1993)).  However, "[t]he plaintiff must at least establish that the employer was

actually aware of the protected expression at the time the employer took adverse

employment action against the plaintiff" and "[t]he employer's awareness of the

statement may be established by circumstantial evidence."  Holifield, 115 F.3d at 1566

(citing Goldsmith v. City of Atmore, 996 F.2d 1155, 1163 (11th Cir. 1993);  Weaver v.

Casa Gallardo, Inc., 922 F.2d 1515, 1524 (11th Cir. 1991)).

        Once the plaintiff establishes his prima facie case, the employer must proffer a

legitimate, non-discriminatory reason for the adverse employment action.  Holifield, 115

F.3d at 1566 (citing E.E.O.C. v. Reichhold Chems., Inc., 988 F.2d 1564, 1571-72 (11th

Cir. 1993)).  If the employer offers legitimate reasons for the employment action, the

plaintiff must then demonstrate that the employer's proffered explanation is a pretext for

retaliation.  Holifield, 115 F.3d at 1566 (citing Meeks, 15 F.3d at 1021; Goldsmith v.

City of Atmore, 996 F.2d 1155, 1163 (11th Cir. 1993)).  However, the Supreme Court

has held that "a plaintiff's prima facie case, combined with sufficient evidence to find

that the employer's asserted justification is false, may permit the trier of fact to conclude

that the employer unlawfully discriminated." Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 148 (2000).

### 1.  Race Discrimination -- Prima Facie Case

Defendant argues that Plaintiff has failed to show a sufficient causal link regarding his refusal to terminate black workers on the alleged orders of Jeff Bove and that Defendant, through Bove, was even aware of Plaintiff's purported protected activity.  Plaintiff's only evidence in support of these two elements of his prima facie case is that the "facial expressions and physical motions" of Jeff Bove indicated to Plaintiff that the basis of Bove's directive to fire the entire "crew" was on account of their race.  This incident apparently occurred in 2003.  However, even assuming for purposes of the motion that Plaintiff objected to this non-verbal directive to terminate workers because they were black,[3] and that Bove was aware of this objection,[4] the causation to the adverse action of termination in January of 2008 is far too remote.

The Eleventh Circuit has found that a seven month gap is insufficient as a matter of law, Sierminski, 216 F.3d at 951, while several other courts in Florida have found 90 days to be insufficient.  Gaston v. Home Depot, 129 F. Supp. 2d 1355, 1377 (S.D. Fla.

------

[3]  Bove did not recall the incident, other than to state that these employees were likely contract or temporary employees and therefore could not be "fired" by Mohawk, but merely were not requested again by Mohawk from their temporary agency.  Plaintiff has no admissible evidence to dispute the status of these former employees at the warehouse.  Nonetheless, for purposes of summary judgment, the Court takes the facts in the light most favorable to Plaintiff.

[4]  Hernandez testified in his deposition that sometimes he complied with Bove's directive and sometimes he did not.  When he did not fire the workers, sometimes Bove forgot and there was no follow up by Bove, a further indication that Bove was not aware of the protected activity (though the Court assumes he was for purposes of ruling on the present motion).

2001) (Judge Gold) (three to five months insufficient); <u>Higdon v. Jackson</u>, 393 F.3d 1211, 1220 (11th Cir. 2004) (stating that United States Supreme Court has cited with approval decisions in which a three to four month disparity was insufficient to show casual connection) (citing <u>Clark County School Dist. v. Breeden</u>, 532 U.S. 268, 273 (2001)).  This Court therefore concludes that Plaintiff has failed to show any casual link between his objection to termination of black workers because of their race and his adverse action.  Summary judgment is appropriate as to this part of the FWA claim.

### 2.  Privacy Violations -- Prima Facie Case

Plaintiff's second basis for his FWA claim is his opposition to alleged privacy violations regarding the photographs in the bathroom.  Defendant argues that Plaintiff did not engage in protected activity as to this incident, because intentional torts are not covered under the FWA.  Rather, Defendant asserts that the protected activity must be a violation of a law, rule or regulation, and not just an intentional tort.  Fla. Stat. § 448.102; <u>Ruiz v. Aerorep Group Corp.</u>, 941 So. 2d 505, 507 (Fla.Dist.Ct.App. 2006). Plaintiff argues in response that Florida Statutes §§ 810.14 and 810.145 prohibit voyeurism and video voyeurism, respectively.  Thus, for purposes of the motion, the Court finds that if Plaintiff in fact opposed this activity, it would be arguably a violation of a Florida law by a Mohawk employee and therefore a protected activity.

Defendant's next argument in support of its summary judgment motion on this part of the FWA claim is that there is no admissible evidence that Warehouse Manager Armando Diaz knew about Plaintiff's complaints to Maxine Headcock of Human Resources regarding the law violation.  This argument attacks two different elements of

a prima facie case -- whether the decision-maker had knowledge of the protected activity and whether a casual link is shown between the protected activity and the adverse action.  In his declaration, Plaintiff states that he finds it incredulous that Diaz would not know about Plaintiff's complaint to Headcock.  However, other than this conclusory assumption, there is no record evidence that Headcock told Diaz about the complaint.   Rather, following the Court's decision striking the errata sheet, Plaintiff complained to Headcock in early January of 2008 about the photographs.[5]  Though this event is close in time to his termination in late January, there is no admissible evidence that the undisputed decision-maker, Warehouse Manager Diaz, knew of Plaintiff's protected activity of complaining to Headcock.  Plaintiff has therefore failed to put forth a prima facie case.

### 3.  Legitimate Reason and Alleged Pretext

Even if the Court were to find that there were material issues of disputed fact with regard to Plaintiff's prima facie case, Defendant has put forth a legitimate reason for his termination, namely performance deficiencies as outlined in the PIP and Diaz finding Plaintiff at home during work hours.

Plaintiff asserts that the PIP and termination were a pretext for his protected activity of complaining about the bathroom photographs.  Plaintiff's theory is that Jeff Bove orchestrated the entire PIP discipline process in an effort to retaliate against

---

[5]  The Court granted the motion to strike Plaintiff's errata sheet attempting to change the date in the testimony to November of 2007, contained within Defendant's motion in limine, after hearing argument at the hearing, based upon the authority within the decision of Reynolds v. IBM, 320 F. Supp. 2d 1290, 1300-01 (M.D. Fla. 2004), *aff'd*, 124 Fed. App'x. 982 (11th Cir. 2004).

Plaintiff for this complaint.[6]  However, as the admissible evidence is undisputed that Plaintiff did not complain about the warehouse photographs until January, his theory of pretext in the PIP process must fail because the PIP began two months earlier.[7]

The Court concludes that the admissible evidence in this case, which includes the depositions and the non-hearsay statements contained in the declarations, does not create a genuine issue of material fact that Defendant's reason for termination of Plaintiff was pretextual.  Plaintiff was terminated for being found at home while the employees he was supervising were still on the clock,[8] after being put on notice of his lack of supervision of his employees.  The Court will therefore grant summary judgment to Defendant on the FWA claim.

_____

[6]  Plaintiff's evidence also asserts that Bove, along with supervisor Wilson Alvarez, ran the warehouse through fear and intimidation, favoring certain friends over others.  Bove was allegedly also mad at Plaintiff for helping a number of workers complain directly to Mohawk's Atlanta office, causing an internal investigation of the warehouse operations.  However, none of these alleged motives can be tied to any protected activity or law violations alleged in Plaintiff's claim.  Rather, they appear related to a feud within the warehouse.

[7]  Plaintiff also argues that his prior positive evaluations and missing evaluations are further evidence of pretext.  As to the allegedly "missing" evaluations, Jeff Bove testified that though supervisors should be reviewed twice a year, the unwritten policy was not always followed, which explains why Plaintiff's personnel file does not contain nearly enough reviews if Bove's policy was followed.  Plaintiff alleges that the failure to produce these reviews, which Plaintiff contends are all positive, is further evidence of pretext of his termination.  As Plaintiff was only made a supervisor in Samples in 2007, the existence or non-existence of prior evaluations is not material to this decision.

[8]  The Court recognizes Plaintiff testified that supervisors were not required to report to anyone if and when they decided to go home for lunch.  However, it is undisputed that Plaintiff was placed on a PIP which specifically stated that Plaintiff was deficient at supervising his employees as to their whereabouts.  The fact that Plaintiff never agreed to his alleged deficiencies is not at issue here.  Plaintiff's termination was of the "caught red-handed" variety, in that he was terminated after his manager found him at home at a time his employees were on the clock after being warned to better supervise his employees.

11

## III.  CONCLUSION

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

1.    Defendant's Corrected Motion for Summary Judgment [DE 38] is hereby

   **GRANTED**;

2.    The Court will separately enter final summary judgement in favor of Defendant.

   **DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County,

Florida, this 8th day of September, 2009.

JAMES I. COHN
United States District Judge

copies to:

counsel of record on CM/ECF